United States District Court
Southern District of Texas
**ENTERED**
March 18, 2024
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| LM INSURANCE CORPORATION, § | |
| § | |
| Plaintiff, § | |
| VS. § | CIVIL ACTION NO. 4:22-CV-3723 |
| § | |
| NAUTILUS INSURANCE COMPANY, § | |
| § | |
| Defendant. § | |
| § | |

## MEMORANDUM OPINION AND ORDER

This is an insurance coverage dispute involving the additional-insured provisions of a commercial general liability ("CGL") policy. The plaintiff, LM Insurance Corporation ("LMI"), insures a contractor named Blazer Building Texas, LLC ("Blazer"). (Dkt. 16 at p. 1). The defendant, Nautilus Insurance Company ("Nautilus"), insures a subcontractor named Ranger Fire, Inc. ("Ranger") that installs fire sprinklers. (Dkt. 16 at p. 1). An employee of Ranger named Ramiro Morin ("Morin") has sued Blazer in state court for injuries that Morin allegedly sustained while working for Ranger on a construction job for which Blazer was the general contractor. (Dkt. 16-1 at pp. 180–88). Morin's lawsuit ("the state court suit") is ongoing and is currently set for trial in July of 2024. *See* docket for case number 2020-14004 in the District Court for the 333rd Judicial District of Harris County, Texas.

In this lawsuit, LMI seeks a judicial declaration that Nautilus has a duty to defend and indemnify Blazer in the state court suit as an additional insured under Ranger's CGL policy. (Dkt. 1 at p. 2). LMI and Nautilus have filed cross-motions for summary judgment.

Nautilus's motion (Dkt. 18) is **DENIED**. LMI's motion (Dkt. 17) is **GRANTED** as to the duty to defend and **DENIED** as to the duty to indemnify. This case is **STAYED** and **ADMINISTRATIVELY CLOSED** until final judgment is entered in the state court suit. At that time, the parties may reurge their motions on the duty to indemnify.

### I. BACKGROUND

Blazer hired Ranger to install fire sprinklers on a construction job for which Blazer was the general contractor. (Dkt. 16-1 at pp. 77–89). The contract between Blazer and Ranger stipulated that Ranger would name Blazer as an additional insured on Ranger's CGL policy, and LMI and Nautilus agree that Ranger did so. (Dkt. 16-1 at p. 85; Dkt. 17 at pp. 6–7; Dkt. 18 at p. 4).

#### a. The relevant language of the policy

Additionally, LMI and Nautilus agree that the following clause in Ranger's CGL policy is the focal point of this dispute:

> Such additional insured status applies only:
>
> 1. Under **COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY** and **COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY** for claims or **suits** resulting from:
>
>    a. **Your work** performed for such person(s) or organization(s) in the performance of your ongoing operations for the additional insured; or

Dkt. 16-1 at p. 48.

The parties further agree that this clause makes Blazer an additional insured on Ranger's CGL policy for claims or suits "resulting from" Ranger's work performed for Blazer. (Dkt. 17 at pp. 6–7; Dkt. 18 at p. 4).

### b. The state court suit

In the state court suit, Morin alleges that he suffered catastrophic injuries when he fell into an open elevator shaft while walking through an apartment construction site that was "operated by and/or controlled by" Blazer. (Dkt. 16-1 at p. 182). Morin's pleadings in the state court suit allege that he was on the site because he "was working for a fire sprinkler installation contractor[.]" (Dkt. 16-1 at p. 182). Morin's pleadings do not identify Ranger by name, but no party asserts either that Morin was working for a different fire sprinkler contractor or that Blazer hired any fire sprinkler contractor besides Ranger.

Morin sued Blazer in the state court suit for negligence and gross negligence for "fail[ing] to deploy guards and warnings in and around the elevator shaft[.]" (Dkt. 16-1 at p. 182). The state court suit is currently set for trial in July of 2024. *See* docket for case number 2020-14004 in the District Court for the 333rd Judicial District of Harris County, Texas.

### c.   This lawsuit

In this lawsuit, LMI seeks a judicial declaration that Nautilus has a duty to defend and indemnify Blazer in the state court suit as an additional insured under Ranger's CGL policy. (Dkt. 1 at p. 2). LMI and Nautilus have filed cross-motions for summary judgment. (Dkt. 17; Dkt. 18).

## II.   SUMMARY JUDGMENTS

Federal Rule of Civil Procedure 56 mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing of the existence of an element essential to the party's case and on which that party

will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In deciding a motion for summary judgment, the Court must determine whether the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. *Id*. at 322–23.

For summary judgment, the initial burden falls on the movant to identify areas essential to the non-movant's claim in which there is an absence of a genuine issue of material fact. *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005). The movant, however, need not negate the elements of the non-movant's case. *See Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005). The movant may meet its burden by pointing out the absence of evidence supporting the non-movant's case. *Duffy v. Leading Edge Products, Inc.*, 44 F.3d 308, 312 (5th Cir. 1995).

If the movant meets its initial burden, the non-movant must go beyond the pleadings and designate specific facts showing that there is a genuine issue of material fact for trial. *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001). "An issue is material if its resolution could affect the outcome of the action. A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *DIRECT TV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2006) (citations omitted).

In deciding whether a genuine and material fact issue has been created, the facts and inferences to be drawn from those facts must be reviewed in the light most favorable to the non-movant. *Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412

(5th Cir. 2003). However, factual controversies are resolved in favor of the non-movant "only when both parties have submitted evidence of contradictory facts." *Alexander v. Eeds*, 392 F.3d 138, 142 (5th Cir. 2004) (citation and quotation marks omitted). The non-movant's burden is not met by mere reliance on the allegations or denials in the non-movant's pleadings. *See Diamond Offshore Co. v. A & B Builders, Inc.*, 302 F.3d 531, 545 n.13 (5th Cir. 2002). Likewise, "conclusory allegations" or "unsubstantiated assertions" do not meet the non-movant's burden. *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 399 (5th Cir. 2008). Instead, the non-movant must present specific facts which show the existence of a genuine issue concerning every essential component of its case. *Am. Eagle Airlines, Inc. v. Air Line Pilots Ass'n, Int'l*, 343 F.3d 401, 405 (5th Cir. 2003). In the absence of any proof, the Court will not assume that the non-movant could or would prove the necessary facts. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). And Rule 56 does not impose upon the Court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment; evidence not referred to in the response to the motion for summary judgment is not properly before the Court, even if it exists in the summary judgment record. *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003).

### III.   THE COVERAGE DISPUTE

The Court concludes that LMI is entitled to summary judgment on the duty-to-defend issue, as the state court suit falls within the scope of the additional-insured provisions of Ranger's CGL policy. However, the Court will defer the question of whether

Nautilus has a duty to indemnify Blazer in the state court suit until the conclusion of the state court suit.

### a. The duty to defend

Under Texas law, insurance policies are construed in accordance with the same rules as contracts generally. *Canutillo Independent School Dist. v. National Union Fire Insurance Co. of Pittsburgh, Pa.*, 99 F.3d 695, 700 (5th Cir. 1996). A court's primary concern in construing a written contract is to ascertain the true intent of the parties as expressed in the instrument. *Federal Insurance Co. v. Northfield Insurance Co.*, 837 F.3d 548, 552 (5th Cir. 2016). In determining whether an insurer has a duty to defend an insured against a third-party complaint, Texas courts follow the "eight corners" rule. *Canutillo*, 99 F.3d at 701. The eight corners rule determines whether the insurer has a duty to defend by comparing the allegations in the third party's pleadings with the language of the insurance policy. *National Union Fire Insurance Co. of Pittsburgh, Pa. v. Merchants Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex. 1997). When applying the eight corners rule, "the court must focus on the factual allegations that show the origin of the damages rather than on the legal theories alleged." *Id*. (quotation marks omitted). In addition to the factual allegations, a court must consider "any reasonable inferences that flow from the facts alleged." *Liberty Mutual Insurance Co. v. Graham*, 473 F.3d 596, 601 (5th Cir. 2006). "If a petition does not allege facts within the scope of coverage, an insurer is not legally required to defend a suit against its insured." *Merchants*, 939 S.W.2d at 141.

The Texas Supreme Court recently reaffirmed that, "in most cases, whether a duty to defend exists is determined under Texas's longstanding eight-corners rule." *Monroe*

*Guaranty Insurance Co. v. BITCO General Insurance Corp.*, 640 S.W.3d 195, 204 (Tex. 2022). The Texas Supreme Court added, however, that:

> if the underlying petition states a claim that could trigger the duty to defend, and the application of the eight-corners rule, due to a gap in the plaintiff's pleading, is not determinative of coverage, Texas law permits consideration of extrinsic evidence provided the evidence (1) goes solely to an issue of coverage and does not overlap with the merits of liability, (2) does not contradict facts alleged in the pleading, and (3) conclusively establishes the coverage fact to be proved.
> *Id*.

The insured bears the initial burden of showing that the claim against it is potentially within the insurance policy's scope of coverage. *Federal Insurance*, 837 F.3d at 552. If there is doubt as to whether a third party's allegations against the insured state a cause of action within the coverage of a liability policy sufficient to compel the insurer to defend the action, such doubt will be resolved in the insured's favor. *Id.*

### i. *Nautilus's arguments regarding its duty to defend Blazer*

Nautilus argues that it has no duty to defend Blazer because the state court suit falls outside the scope of the additional-insured provisions of Ranger's CGL policy. Nautilus supports this argument with two contentions: (1) "Ranger is not named as a defendant in the [state court suit] and is not mentioned in [Morin's pleadings;]" and (2) "[T]here are no facts alleged in the [state court suit] implicating Ranger's work in connection with [Morin's] injuries . . . [e]ven if extrinsic evidence were considered to identify Ranger as the sprinkler installer" for whom Morin was working. (Dkt. 18 at p. 4; Dkt. 19 at p. 14). The Court disagrees with Nautilus. LMI has met its burden of showing that Morin's claims

against Blazer are potentially within the scope of the additional-insured provisions of Ranger's CGL policy.

### —Morin's connection to Ranger

Nautilus first contends that the state court suit falls outside the scope of the additional-insured provisions of Ranger's CGL policy because Ranger is neither named as a defendant in the state court suit nor mentioned in Morin's pleadings. (Dkt. 18 at p. 4). Put another way, Nautilus contends that the state court suit does not result from the work that Ranger performed for Blazer because Morin's pleadings do not specifically state that he was working for Ranger when he was injured. In Nautilus's view, since Morin's pleadings in the state court suit allege only that he was on the site because he "was working for a fire sprinkler installation contractor[,]" the eight corners rule forestalls the specific conclusion that Morin was on the site because he was working for Ranger. (Dkt. 16-1 at p. 182; Dkt. 18 at pp. 13–14).

The Court finds this argument unconvincing. LMI and Nautilus have filed a joint stipulation of facts on the docket in this case. (Dkt. 16). LMI and Nautilus have attached numerous documents to that stipulation of facts and have further "stipulate[d] that the [attached] documents are true and correct copies of the originals and are admissible at trial and hearing." (Dkt. 16 at p. 3). The specific identity of Morin's employer goes solely to an issue of coverage and does not overlap with the merits of liability in the state court suit. Furthermore, the extrinsic documents submitted by the parties may be used to establish that Morin worked for Ranger because the fact that Morin worked for Ranger does not contradict any facts alleged in Morin's pleading and is conclusively established by the

extrinsic documents. Accordingly, the Court will consult the extrinsic documents under the Texas Supreme Court's *Monroe* opinion to establish that Morin worked for Ranger. *See Monroe*, 640 S.W.3d at 204; *see also, e.g., National Liability & Fire Insurance v. Turimex, LLC*, No. 4:21-CV-3967, 2022 WL 16838038 at *4 (S.D. Tex. Oct. 20, 2022), *adopted*, 2022 WL 16836342 (S.D. Tex. Nov. 9, 2022) (citing *Monroe* and considering an Automobile Loss Notice and written communications between claims representatives and attorneys to determine that a car crash occurred outside of a business auto policy's coverage territory).

One of the documents jointly submitted to this Court by the insurance carriers is the subcontract whereby Blazer hired Ranger to install fire sprinklers. (Dkt. 16-1 at p. 77). The record does not contain any contract between Blazer and any other company to install fire sprinklers. Moreover, another of the documents jointly submitted to this Court by the insurance carriers is Nautilus's letter denying LMI's request for a defense of Blazer against the state court suit. In that letter, Nautilus does not contend that Morin did not work for Ranger; rather, Nautilus argues that it does not owe Blazer a defense because Morin "was on a break and was looking for a restroom" when he was injured and because "Ranger Fire was not performing any work in the area of the site where this incident took place." (Dkt. 16-1 at p. 178).

The Court concludes that consideration of the extrinsic evidence contained in docket entry 16 is appropriate under the standard articulated in the Texas Supreme Court's *Monroe* opinion and further concludes that the extrinsic evidence conclusively establishes that Morin worked for Ranger.

—**The meaning of "resulting from"**

Nautilus next contends that the state court suit falls outside the scope of the additional-insured provisions of Ranger's CGL policy because "there are no facts alleged in the [state court suit] implicating Ranger's work in connection with [Morin's] injuries . . . [e]ven if extrinsic evidence were considered to identify Ranger as the sprinkler installer" for whom Morin was working. (Dkt. 18 at p. 4; Dkt. 19 at p. 14). The Court finds this argument unconvincing as well.

As previously noted, the parties agree that Ranger's CGL policy makes Blazer an additional insured for claims or suits "resulting from" Ranger's work performed for Blazer. (Dkt. 17 at pp. 6–7; Dkt. 18 at p. 4). The parties differ, however, on the meaning of the phrase "resulting from." LMI contends that the phrase "resulting from" is synonymous with the phrase "arising out of" and in support cites the Texas Supreme Court's opinion in *Lancer Insurance Co. v. Garcia Holiday Tours*, 345 S.W.3d 50 (Tex. 2011). (Dkt. 17 at p. 12). From there, LMI analogizes this case to coverage cases decided under Texas law in which the operative additional-insured language used the phrase "arising out of." (Dkt. 17 at pp. 10–11).

The Court finds LMI's position compelling. As LMI points out, the Texas Supreme Court wrote in *Lancer* that it can "see no significant distinction between" the phrases "resulting from" and "arising out of." *Lancer*, 345 S.W.3d at 55. And the cases and treatises cited by the *Lancer* Court equate the two phrases over a broad array of contexts. *Id.* ("The treatises generally equate the two phrases."); *see also Mork Clinic v. Fireman's Fund Insurance Co.*, 575 N.W.2d 598, 602 (Minn. Ct. App. 1998) (construing a medical services

exclusion in a CGL policy in a case involving allegations of sexual abuse by a physician); *Pension Trust Fund v. Federal Insurance Co.*, 307 F.3d 944, 952 (9th Cir. 2002) (construing a fiduciary responsibility insurance policy in a case involving allegations that an employee benefit trust breached common law fiduciary duties associated with its commercial transactions); *Heritage Mutual Insurance Co. v. State Farm Mutual Insurance Co.*, 657 So.2d 925, 927 (Fla. Dist. Ct. App. 1995) (construing an auto liability policy in a case involving one child hitting another child in the head in a church-owned van during a trip to a skating rink); *St. Paul Fire & Marine Insurance Co. v. Antel Corp.*, 899 N.E.2d 1167, 1175 (2008) (construing a vendor's endorsement in a liability policy in a chemical plant explosion case); *Dupuy v. Gonday*, 450 So.2d 1014, 1016 (La. Ct. App. 1984) (construing an uninsured motorist endorsement in a business auto policy in a case involving a road-rage shooting).

The Texas Supreme Court's discussion in *Lancer* of the phrases "resulting from" and "arising out of" lends dispositive force to LMI's argument that this case is analogous to the additional-insured cases on which it relies. In *Admiral Insurance Co. v. Trident NGL, Inc.*, 988 S.W.2d 451, 455 (Tex. App.—Houston [1st Dist.] 1999, pet. denied), the First Court of Appeals of Texas held that the owner of a compressor station was covered by an additional-insured provision when an explosion at the compressor station injured the employee of a facility service company hired to perform preventive maintenance on the compressor. The First Court of Appeals reasoned that:

> because the accident in this case occurred to a[n] employee [of the facility service company] while the employee was on the premises for the purpose of performing preventive maintenance on the compressor that exploded, the

> alleged liability for the employee's injuries "arose out of [the facility service company's] operations," and, therefore, was covered by the "additional insured" provision.
>
> *Id.*

The Third Court of Appeals of Texas employed similar reasoning to reach a similar result in *McCarthy Brothers Co. v. Continental Lloyds Insurance Co.*, 7 S.W.3d 725, 730 (Tex. App.—Austin 1999, no pet.), holding that a slip-and-fall injury suffered at a job site by a subcontractor's employee "arose out of" the subcontractor's operations, entitling the additional-insured general contractor to a defense under the subcontractor's CGL policy. Finally, in *Mid-Continent Casualty Co. v. Swift Energy Co.*, 206 F.3d 487, 499–500 (5th Cir. 2000), the Fifth Circuit followed *Admiral* and *McCarthy* in holding that the additional-insured lessee/operator of an oil drilling site was entitled to a defense under a casing contractor's CGL policy after a gas release and explosion at the site injured one of the casing contractor's workers. The Fifth Circuit reasoned that:

> when injured, [the injured worker] was an . . . employee [of the casing contractor] on [the lessee/operator's] premises in connection with [the casing contractor's] operations.  Under *Admiral* and *McCarthy,* [the injured worker's] injuries therefore "arose out of" [the casing contractor's] operations. We . . . hold that [the lessee/operator] is covered as an additional insured under the [casing contractor's CGL] Policy even though [the casing contractor] was not negligent.
> *Id.* at 500.

The Texas Supreme Court has approvingly cited *Admiral*, *McCarthy*, and *Swift* and has endorsed "a more liberal causation theory of additional insured provisions" in lieu of a "fault-based interpretation" that would "require proximate cause or legal causation." *Evanston Insurance Co. v. ATOFINA Petrochemicals, Inc.*, 256 S.W.3d 660, 664–66 & nn. 7, 15 (Tex. 2008) ("In cases in which the premises condition caused a personal injury, the

12 / 14

injury respects an operation if the operation brings the person to the premises for purposes of that operation. The particular attribution of fault between insured and additional insured does not change the outcome.") (footnotes omitted).

The Court will follow the reasoning of *Admiral*, *McCarthy*, *Swift*, and *Evanston*. In the state court suit, Morin has alleged that he was injured while walking through an apartment construction site that was "operated by and/or controlled by" Blazer and that he was on the site because he "was working for a fire sprinkler installation contractor" that the properly considered extrinsic evidence has conclusively shown was Ranger. (Dkt. 16-1 at p. 182). Accordingly, Nautilus has a duty to defend Blazer under the additional-insured provisions of Ranger's CGL policy.

### b. The duty to indemnify

However, the Court will defer the question of whether Nautilus has a duty to indemnify Blazer in the state court suit until the conclusion of the state court suit.

The duty to indemnify "arises after an insured has been adjudicated, whether by judgment or settlement, to be legally responsible for damages in a lawsuit." *Collier v. Allstate County Mutual Insurance Co.*, 64 S.W.3d 54, 62 (Tex. App.—Fort Worth 2001, no pet.); *see also Reser v. State Farm Fire & Casualty Co.*, 981 S.W.2d 260, 263 (Tex. App.—San Antonio 1998, no pet.). Unlike the duty to defend, which is based on allegations, an insurer's duty to indemnify is based on "the actual facts that underlie the cause of action and result in liability." *Northfield Insurance Co. v. Loving Home Care, Inc.*, 363 F.3d 523, 528–29 (5th Cir. 2004) (quotation marks omitted). "[I]t may be necessary to defer resolution of indemnity issues until after the underlying third-party litigation is

resolved because coverage may turn on facts actually proven in the underlying lawsuit." *D.R. Horton-Texas, Ltd. v. Markel International Insurance Co., Ltd.*, 300 S.W.3d 740, 745 (Tex. 2009).

At this juncture, the Court does not see any compelling reason to render a decision regarding Nautilus's possible duty to indemnify Blazer. Accordingly, the Court will stay and administratively close this case until the state court suit is resolved.

### IV.  CONCLUSION

Nautilus's motion for summary judgment (Dkt. 18) is **DENIED**. LMI's motion for summary judgment (Dkt. 17) is **GRANTED** as to the duty to defend and **DENIED** as to the duty to indemnify. This case is **STAYED** and **ADMINISTRATIVELY CLOSED** until final judgment is entered in the state court suit. At that time, the parties may reurge their motions on the duty to indemnify.

SIGNED at Houston, Texas, on March 18, 2024.

                                                                                          _____
                                                                                          GEORGE C. HANKS, JR.
                                                                                          UNITED STATES DISTRICT JUDGE